UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

          Plaintiff,                Case No. 18-cr-20151

v.                              HON. MATTHEW F. LEITMAN
                              United States District Judge

DIAMOND FIELDS,

          Defendant.

---

## UNITED STATES' RESPONSE OPPOSING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

---

Defendant, Diamond Fields was involved in a large scale wire fraud conspiracy.  She pleaded guilty and was sentenced on November 19, 2018, to 38 months' imprisonment to be served concurrently with the undischarged term of her state sentence.  (ECF No. 276, PageID 864).

Fields began serving her current sentence on February 12, 2020. She now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The Court should deny Fields' motion because her release would pose a danger to the community and would be inconsistent with the factors in 18 U.S.C. § 3553(a).

1

Fields does not qualify for compassionate release because her offense and criminal history make her a danger to the community, which precludes release under USSG § 1B1.13(2), and because the § 3553(a) factors—which the Court must also consider under § 3582(c)(1)(A)—likewise do not support release.

The Bureau of Prisons has also taken significant steps to protect all inmates, including Fields, from Covid-19. Since January 2020, the Bureau of Prisons has implemented "a phased approach nationwide," implementing an increasingly strict protocol to minimize the virus's spread in its facilities. *Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). And the Bureau of Prisons has assessed its entire population to determine which inmates face the most risk from Covid-19, pose the least danger to public safety, and can safely be granted home confinement. As of August 13, 2020, this process has already resulted in over 7,000 inmates being placed on home confinement. *See* BOP Covid-19 Website. Especially given the Bureau of Prisons' efforts—and "the legitimate concerns about public safety" from releasing inmates who might "return to their criminal activities," *Wilson*, 961 F.3d at 845—the Court should deny Fields' motion for compassionate release.

## Background

Fields was involved in a large scale, multi-million dollar, wire fraud conspiracy that took place over several years in 39 different states. Her personal involvement was from May 2016 through July 2017. Fields committed the offense on at least 69 occasions in 23 different states. She was personally responsible for a financial loss in excess of $400,000. (PSR ¶s 7-13).

The probation department calculated Fields' advisory sentencing guideline range to be 33 to 41 months' imprisonment. (PSR ¶ 57). Fields was sentenced to 38 months' imprisonment to be followed by 2 years of supervised release. Her sentence was ordered to run currently with the undischarged term of imprisonment for a fraud offense in Ohio. (ECF No. 365, PageID 864-65).

Fields began serving her federal sentence on February 12, 2020, and is currently incarcerated at FCI Hazelton. She is 26 years old, and her projected release date is July 31, 2021. (Attached Gvt's Exh 1). Fields is obese with a BMI over 50. Her other medical conditions include asthma, anxiety and depression. (ECF 394, Def's Exhibit A).

Fields previously requested compassionate release from the Bureau of Prisons and the government does not contest that she has exhausted her administrative remedies. (ECF 394, PageD 1754, Def.'s Exhibit B).

## Argument

## I.   The Bureau of Prisons has responded to Covid-19 by protecting inmates.

### A.   The Bureau of Prisons' precautions have mitigated the risk from Covid-19 within its facilities.

The Bureau of Prisons has reacted quickly to confront Covid-19's spread within its facilities. *Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). For over almost a decade, the Bureau of Prisons has maintained a detailed protocol for responding to a pandemic. Consistent with that protocol, the Bureau of Prisons began planning for Covid-19 in January 2020. *Wilson*, 961 F.3d at 833–34.

On March 13, 2020, the Bureau of Prisons started modifying its operations to implement its Covid-19 Action Plan and minimize the risk of Covid-19 transmission into and inside its facilities. *Id.*; *see* BOP Covid-19 Modified Operations Website. Since then, as the worldwide crisis has evolved, the Bureau of Prisons has repeatedly revised its plan. *Wilson*, 961 F.3d at 834. To stop the spread of the disease, the Bureau of Prisons has restricted inmate movement within and between

4

facilities. *Id.* When new inmates arrive, asymptomatic inmates are placed in quarantine for a minimum of 14 days. *Id.* Symptomatic inmates are provided with medical evaluation and treatment and are isolated from other inmates until testing negative for Covid-19 or being cleared by medical staff under the CDC's criteria. *Id.*

Within its facilities, the Bureau of Prisons has "modified operations to maximize physical distancing, including staggering meal and recreation times, instating grab-and-go meals, and establishing quarantine and isolation procedures." *Id.* Staff and inmates are issued face masks to wear in public areas. *See* BOP FAQs: Correcting Myths and Misinformation. Staff and contractors are screened for symptoms, and contractors are only permitted to access a facility at all if performing essential service. *Wilson*, 961 F.3d at 834. Social visits have been suspended to limit the number of people entering the facility and interacting with inmates. *Id.* But to ensure that relationships and communication are maintained throughout this disruption, the Bureau of Prisons has increased inmates' telephone allowance to 500 minutes per month. Legal visits are permitted on a case-by-case basis after the attorney has been screened for infection.

5

Like all other institutions, penal and otherwise, the Bureau of Prisons has not been able to eliminate the risks from Covid-19 completely, despite its best efforts. But the Bureau of Prisons' measures will help federal inmates remain protected from Covid-19 and ensure that they receive any required medical care during these difficult times.

## II. The Court should deny Fields' motion for compassionate release.

Fields' motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

First, compassionate release requires exhaustion. If a defendant moves for compassionate release, the district court may not act on the

6

motion unless the defendant files it "after" either completing the
administrative process within the Bureau of Prisons or waiting 30 days
from when the warden at her facility received her request. 18 U.S.C.
§ 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir.
2020). And as the Sixth Circuit recently held, this statutory exhaustion
requirement is mandatory. *Alam*, 960 F.3d at 832–36.  The government
does not contest that Fields has exhausted her administrative remedies.

*Second*, even if a defendant exhausts, she must show "extraordinary
and compelling reasons" for compassionate release, and release must be
"consistent with" the Sentencing Commission's policy statements. 18
U.S.C. § 3582(c)(1)(A). As with the identical language in § 3582(c)(2),
compliance with the policy statements incorporated by § 3582(c)(1)(A) is
mandatory. *See Dillon v. United States*, 560 U.S. 817 (2010); *United
States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014). To qualify, a
defendant must have a medical condition, age-related issue, family
circumstance, or other reason that satisfies the criteria in USSG
§ 1B1.13(1)(A) & cmt. n.1, and he must "not [be] a danger to the safety
of any other person or to the community," USSG § 1B1.13(2).  While the
government does not contest that Fields' health issues are

7

extraordinary and compelling reasons for release, the Court should not release Fields because she would be a danger to the community.

*Third*, even if a defendant is eligible for compassionate release, a district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. As at sentencing, those factors require the district court to consider the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a). Fields' release would be inconsistent with the factors in § 3553(a).

## A. Fields is not eligible for compassionate release under the mandatory criteria in USSG § 1B1.13.

Congress tasked the Sentencing Commission with "describ[ing] what should be considered extraordinary and compelling reasons for [a] sentence reduction" under § 3582(c)(1)(A), as well as developing "the criteria to be applied and a list of specific examples" for when release is permitted. 28 U.S.C. § 994(t). The compassionate-release statute thus permits a sentence reduction only when "consistent with" the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A).

8

Because the Sentencing Commission fulfilled Congress's directive in USSG § 1B1.13, compliance with that policy statement is mandatory for any defendant seeking compassionate release under § 3582(c)(1)(A). The Supreme Court has already reached the same conclusion for compliance with USSG § 1B1.10 under 18 U.S.C. § 3582(c)(2), based on the statutory language there. *Dillon v. United States*, 560 U.S. 817, 827 (2010). And the statutory language in § 3582(c)(1)(A) is identical to the language in § 3582(c)(2). *Compare* § 3582(c)(1)(A) (requiring that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"), *with* § 3582(c)(2) (same). When Congress uses the same language in the same statute, it must be interpreted in the same way. *United States v. Marshall*, 954 F.3d 823, 830 (6th Cir. 2020). In both contexts, then, the Sentencing Commission's restraints "on a district court's sentence-reduction authority [are] absolute." *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014) (citing *Dillon*, 560 U.S. 817); *accord United States v. Saldana*, 807 F. App'x 816, 819–20 (10th Cir. 2020).

The First Step Act did not change that. It amended only *who* could move for compassionate release under § 3582(c)(1)(A). It did not amend

the substantive requirements for release. *Saldana*, 807 F. App'x at 819–20. Section 1B1.13 remains binding.

Fields' medical records  establish thats she has medical conditions, which the CDC has confirmed are risk factors that place a person at increased risk of severe illness from Covid-19. *See* CDC Risk Factors (as updated). Given the heightened risk that Covid-19 poses to someone with those medical conditions, Fields has satisfied the first eligibility threshold for compassionate release during the pandemic. *See* USSG § 1B1.13(1)(A) & cmt. n.1(A).

But Fields remains ineligible for compassionate release because she is a danger to the community. Section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." As with the other requirements in § 1B1.13, this prohibition on releasing dangerous defendants applies to *anyone* seeking compassionate release. 18 U.S.C. § 3582(c)(1)(A) (requiring that release be "consistent with" § 1B1.13); *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (confirming that a released defendant must "not represent a danger to the safety of any other person or the community"). Although a court

10

must also evaluate the defendant's dangerousness when balancing the § 3553(a) factors, dangerousness alone is a per se bar to release under USSG § 1B1.13(2). *United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020); *United States v. Oliver*, No. 2:17-cr-20489, 2020 WL 2768852, at *7 (E.D. Mich. May 28, 2020).

An evaluation of dangerousness under § 3142(g)—which § 1B1.13(2) references for its dangerousness determination—requires a comprehensive view of community safety, "a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (per curiam). Indeed, even when considering *pretrial* detention under § 3142(g), "[t]he concept of a defendant's dangerousness encompasses more than merely the danger of harm involving physical violence." *United States v. Williams*, No. 20-1413, 2020 WL 4000854, at *1 (6th Cir. July 15, 2020) (citing *United States v. Vance*, 851 F.2d 166, 169–70 (6th Cir. 1988)). That reasoning applies even more strongly post-judgment, when the defendant's presumption of innocence has been displaced by a guilty plea or jury's verdict and when "the principle of finality" becomes "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989).

11

Section 1B1.13(2) is thus a significant hurdle to release. It bars the release of violent offenders. It bars the release of most drug dealers, "even without any indication that the defendant has engaged in violence." *United States v. Stone*, 608 F.3d 939, 947–48 & n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community."); *Knight*, 2020 WL 3055987, at *3. It bars the release of defendants whose offenses involved minor victims or child pornography. *See United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at *3 (6th Cir. July 8, 2020). It also bars the release of many "non-violent" offenders, such as defendants who were involved in serial or significant fraud schemes or otherwise present a danger to the community in some respect. *See Stone*, 608 F.3d at 948 n.7; *United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) ("[D]anger may, at least in some cases, encompass pecuniary or economic harm."); *United States v. Israel*, No. 17-20366, 2017 WL 3084374, at *5 (E.D. Mich. July 20, 2017) (recognizing that "economic harm may qualify as a danger" foreclosing release); *United States v. Persaud*, No. 05-CR-368, 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007) (citations omitted) ("economic harm qualifies as a danger within the contemplation of the Bail Reform

12

Act."); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1270 (S.D. Fla. 2005) (citations omitted) ("There can be no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act.").

Adhering to § 1B1.13(2) is especially important given the current strain on society's first responders and the rise in certain types of crime during the Covid-19 pandemic. Police departments in many cities have been stretched to their limits as officers have either contracted Covid-19 or been placed in quarantine. Some cities, including Detroit, have seen spikes in shootings and murders. Child sex predators have taken advantage of bored school-aged kids spending more time online. Covid-19-based fraud schemes have proliferated. Drug overdoses are skyrocketing. There are real risks to public safety right now, and those risks will only increase if our community is faced with a sudden influx of convicted defendants.

Because Fields' release would endanger the community, § 1B1.13(2) prohibits reducing her sentence under § 3582(c)(1)(A). Fields been involved in the criminal justice system since she was 18 years old. (PSR

¶s 29).  She has been unable to live in the community for any extended period of time without committing a new crime.  Even after her arrest in Ohio in December 2016, she continued to commit the wire fraud in the instant case for another six months.  (*Id.* ¶s 13, 33).  Her prior record includes several fraud offenses and a misdemeanor assault and battery offense that was ultimately dismissed after the expiration of a delayed sentence.  (*Id.* ¶s 29-33). At the time of sentencing she also had three pending fraud cases.  (*Id.*  ¶s 37-39). According to BOP records at least one warrant is currently still active.  (Attached Gvt Exh 2).   She has failed to comply with sentencing alternatives and has therefore served a custodial sentence on each of her convictions.  (PSR ¶s 29-33).

The offense conduct in this case, coupled with defendant's history strongly suggest that once released she will return to criminal activity. Even the Bureau of Prisons has designated Fields as being a high risk of recidivism.  (Attached Gvt Exh 3).  As set forth above, even economic harm may result in a finding of dangerousness.

Because Fields' release would endanger the community, § 1B1.13(2) prohibits reducing her sentence under § 3582(c)(1)(A).

14

### C.   The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons" and demonstrated that she is not dangerous, she is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate.  *See United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020) ("The § 3553(a) factors . . . weigh against his request for compassionate release."); *United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *3–*5 (E.D. Mich. May 15, 2020) (holding that the "[d]efendant's circumstances do not warrant compassionate release . . . under 18 U.S.C. § 3553(a)"); *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors). So even if the Court were to find Fields eligible for compassionate release, the § 3553(a) factors should still disqualify her.

15

Three sentencing factors are particularly relevant to Fields' request for compassionate release. First, compassionate release would not adequately reflect the serious nature and circumstances of the offense. Fields participated in a multi-million dollar fraud scheme for over one year. She personally executed the scheme on at least 69 occasions in 23 different states. Her participation in the conspiracy was not merely opportune but rather a calculated and continual crime spree that was motivated by greed. Fields personally profited by the wire fraud scheme for more than $400,000. As the Court noted at the sentencing hearing, not only did defendant's conduct have a financial impact on Walmart, her crimes also negatively impacted a number of Walmart employees. (PSR ¶ 118). Innocent, hard-working individuals were accused of crimes, suffered job loss, and at least one employee was arrested and spent time in jail. (*Id.*) Compassionate release would not adequately reflect the seriousness of defendant's offense.

Second, compassionate release would undermine the goal of deterrence. The Bureau of Prisons has classified Fields as having a high risk of recidivism. (Attached Gvt's Exh 3). This is likely because of her prior criminal history and the outstanding warrants. During her

16

participation in the instant offense Fields was arrested and charged in Wood County Ohio with engaging in a pattern of corrupt activity. Despite her state arrest she continued to engage in the fraudulent scheme for more than six months. Because this Court ordered that Fields' federal sentence be served concurrently with her state offense, she has only been in federal custody for a short period of time – approximately 6 months. (Attached Gvt's Exh 1). Reducing Fields' sentence would send a message that there is no additional consequence for committed the federal offense and continuing to execute the scheme.

Prior arrests, jail sentences, and other court's efforts to use alternatives to incarceration have not proven effective to deter Fields from being involved with the criminal justice system. Fields should serve the full term of her sentence so there will be adequate deterrence and punishment to prevent her from slipping into new criminal conduct once she is released.

Finally, compassionate release would fail to protect the public from future crimes by this defendant. As discussed above, Fields has not yet shown that she can live in a community for any sustained period of time without committing a new crime. She has a continuous criminal history

17

and has been involved with the criminal justice system for her entire adult life.  If Fields were to be released now, her track record shows that she probably would immediately return to criminal activity even while under this Court's supervision.

A balancing of the § 3553(a) factors show that this Court should not further reduce Fields' sentence.

## III.  If the Court were to grant Fields' motion, it should order a 14-day quarantine before release.

If the Court were inclined to grant Fields' motion despite the government's arguments above, the Court should order that she be subjected to a 14-day quarantine before release.

## Conclusion

Diamond Fields' motion should be denied.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

*s/ NANCY A. ABRAHAM*
Assistant United States Attorney
600 Church Street
Flint, MI  48502
(810) 766-5177

September 2, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

All Attorneys of Record

Dated: September 2, 2020          s/ Kristi Bashaw, Legal Assistant
                                  United States Attorney's Office

19